RENDERED: AUGUST 7, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2026-CA-0080-ME

J.C. AND R.C.          APPELLANTS


      APPEAL FROM LAWRENCE FAMILY COURT
v.      HONORABLE ADAM O'BRYAN, JUDGE
      ACTION NO. 21-J-00001-003


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; J.C., JR.; AND
B.C., A MINOR CHILD; AND B.C.     APPELLEES

AND

NO. 2026-CA-0082-ME

J.C. AND R.C.          APPELLANT


      APPEAL FROM LAWRENCE FAMILY COURT
v.      HONORABLE ADAM O'BRYAN, JUDGE
      ACTION NO. 21-J-00002-003

COMMONWEALTH OF KENTUCKY
CABINET FOR HEALTH AND
FAMILY SERVICES; J.C., JR.;
F.N.C., A MINOR CHILD;
AND B.C.                                                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ECKERLE, L. JONES, AND KAREM, JUDGES.

KAREM, JUDGE:  J.C. and R.C. are the grandparents of two minor children who were removed from their custody.[1]  In these consolidated appeals, they challenge the Lawrence Family Court's permanency order, which switched the goal for the children from reunification with the grandparents to adoption.  Upon careful review, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In November 2022, J.C. and R.C. ("the grandparents") became the permanent custodians of B.C., born in July 2019 ("the grandson"), and F.N.C.,

---

[1] According to the annual permanency report submitted by the Cabinet in November 2025, the children's parents, B.C. and J.C., Jr. have been involved with the Cabinet since their first child was removed nearly three years before.  Ultimately, their parental rights to that child were terminated.  They continued to work with the Cabinet, but at the time of the report, had made no progress.

born in June 2020 ("the granddaughter"), following a dependency, neglect, and abuse action against the children's parents.

On August 25, 2023, the children were removed from the grandparents' home after a report of "excessive trash outside and inside the home, cockroach infestation, loose black snake in the home, bug bites on the children, [and] putrid smell of the home and vehicle." The grandparents received child welfare services, and the conditions in the home were remedied. The children were returned to the grandparents on October 6, 2023.

Approximately one year later, the Cabinet for Health and Family Services ("the Cabinet") received a report that the children's hygiene and the home environment were being neglected. On November 20, 2024, the children were removed again and placed in a therapeutic foster home. Following a hearing, a finding of neglect was entered on January 30, 2025. On February 7, 2025, the Cabinet filed its dispositional report, recommending return of the grandchildren to the grandparents within three months. Following a hearing on a motion for review, the family court ordered the Cabinet to inspect the home before the next hearing due to the previous environmental concerns.

On April 25, 2025, the Cabinet filed a second dispositional report, again recommending the return of the children to the grandparents in three months. A disposition hearing was held on June 9, 2025, and an order of disposition

-3-

committing the children to the Cabinet was entered on June 12, 2025. On October 29, 2025, the Cabinet filed its annual permanency report, recommending that the goal for the children be changed from reunification with the grandparents to adoption.

The Cabinet's main concerns about the grandparents' ability to look after the children centered on three areas: their treatment of the grandson's serious medical condition; the unsafe condition of their home; and the grandmother's health challenges.

Grandson suffers from diabetes insipidus, a medical condition that causes intense thirst and frequent urination. According to the affidavit of the Cabinet social worker, the grandmother reported that when grandson lived with them, he was consuming approximately 1.75 gallons of water every day, and he had to wear diapers because he was incontinent. She explained that he wet the bed every night, sometimes multiple times, and his bedclothes had to be changed each time. Although grandson had been prescribed two different medications to help his kidney function, there was evidence that the grandparents were not administering the medication regularly. According to a letter from the grandson's specialist physician, his staff discovered that the grandparents did not pick up refills of the grandson's medication in June and October 2024. The social worker reported that, within days of the removal from his grandparents' home, the grandson began

receiving the correct dose of medication and no longer wets himself at night. The social worker opined it was likely that the grandparents' failure to administer the correct amount of medication caused the child to suffer physically and emotionally. After granddaughter's removal from the grandparents' home, she also became potty-trained and now sleeps through the night with no accidents.

An unannounced visit to the grandparents' home showed that the problems that led to the first removal of the children, such as dirt and clutter, continued. The Cabinet also submitted a report from the grandchildren's school, which stated that the children displayed highly disruptive behaviors at school after visitation with their grandparents.

The permanency report also indicated that grandmother's ability to interact with the children and to maintain the home in a safe state was limited due to her health issues. She suffers from several medical conditions, including COPD, and she requires oxygen 24 hours per day. She was admitted to the hospital in September 2024 for carbon dioxide poisoning after giving herself too much oxygen. She has allowed the children to handle and change her oxygen tanks, despite being told by the social worker not to do this because of the safety risk of handling the tanks.

The family court conducted the annual permanency review hearing on November 10, 2025, and thereafter entered an order waiving reasonable efforts

toward reunification and changed the permanency goal for the children to adoption. In its order, the family court noted that the grandparents were fully aware of the reasons the grandchildren were first removed from their home, and of the conditions required for them to remain there safely, yet the children were removed for the second time for similar reasons. The court found that the unsafe living conditions included the children's bedrooms being so cluttered they would not be able to sleep in their own beds. The family court further found that at the time of the removal, neither of the children was potty-trained, but both had become potty-trained after being placed outside the home, which raised concerns about the level of development and supervision at the grandparents' home. The family court found that the grandson requires consistent medication management and regular medical follow-up for his diabetes insipidus, but the grandparents failed to attend his scheduled medical appointments, despite being requested by the Cabinet to do so. The family court expressed concern about grandmother's significant medical limitations and her ability to provide appropriate care and supervision for the children. It concluded that "[t]he deterioration of the home, failure to manage medical needs, ongoing developmental concerns, and the grandmother's medical limitations collectively establish that the grandparents have not remedied the conditions that led to removal, and, given the prior history, are unlikely to do so within a reasonable period of time."

The court concluded that further efforts towards reunification would be futile and contrary to the children's health, safety, and best interests. It ordered reasonable efforts toward reunification to be waived and changed the permanency goal for both children to adoption. It ordered the Cabinet to proceed with permanency planning, including the initiation of termination of parental rights, to continue ensuring that grandson receives proper medical care for diabetes insipidus, and to facilitate all necessary appointments and to oversee his medication.

These appeals, which have been consolidated by order of this Court, followed.

## STANDARD OF REVIEW

> This Court's standard of review of a family court's award of child custody in a dependency, abuse and neglect action is limited to whether the factual findings of the lower court are clearly erroneous. Kentucky Rules of Civil Procedure (CR) 52.01. Whether or not the findings are clearly erroneous depends on whether there is substantial evidence in the record to support them. If the findings are supported by substantial evidence, then appellate review is limited to whether the facts support the legal conclusions made by the finder of fact. The legal conclusions are reviewed de novo. If the factual findings are not clearly erroneous and the legal conclusions are correct, the only remaining question on appeal is whether the trial court abused its discretion in applying the law to the facts.

*L.D. v. J.H.*, 350 S.W.3d 828, 829-30 (Ky. App. 2011) (citations omitted).

A trial court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

## ANALYSIS

The grandparents argue that the family court abused its discretion in part because Kentucky Revised Statute (KRS) 620.090(2), which governs temporary custody orders, favors placement of children with a relative. In addressing a similar argument, this Court stated that "[t]his position is based on a misreading of the statute. Pursuant to KRS 620.090, a court is required to place children with a family member who is *qualified*, and here the court found [the appellant] was not qualified." *J.M. v. Commonwealth, Cabinet For Health and Family Services*, 325 S.W.3d 901, 903 (Ky. App. 2010) (emphasis in original). Similarly, the family court in this case found the grandparents were simply not qualified, and the statute does not compel a different result.

The grandparents further argue that the family court erred in not following the recommendations made in the Cabinet's two dispositional reports that the children be returned to the grandparents within three months. The grandparents point out that they had maintained permanent custody of the grandchildren since November 2022, had a continuous relationship with the children, had successfully reunited with the children before, and had largely

completed the required family services and Cabinet requirements.  They contend that the family court's decision failed to give sufficient weight to the Cabinet's professional assessment and thus constitutes an abuse of discretion.

But the review prepared by a Cabinet social worker in August 2025 and the annual permanency report submitted in October 2025 both recommended changing the permanency goal for the children to adoption.  The report states:

> The Cabinet respectfully requests that efforts to work with the grandparents be waived due to the ongoing concerns with their parenting abilities, medical concerns, as well as them failing to attend education appointments for [grandson's] diabetes insipidus.  They have shown a lack of concern for his condition by also not bringing necessities to the visits consistently.  With this being considered a failed placement for the second time, the Cabinet recommends that a permanency hearing be set for these children.

The family court did not, therefore, disregard the most recent recommendations of the Cabinet in making its decision.  In any event, the family court is not bound by the recommendations of the Cabinet.  The grandparents cite "no legal authority which indicates such recommendations are dispositive of the issue of proper placement of the children." *Id.* at 903.  "In fact, blindly agreeing with the [Cabinet] without consideration of the facts as a whole would have been an abdication of the family court's responsibilities.  Further, accepting the proposition that the court is so bound would eviscerate the principle that placement of neglected children is in the discretion of the court." *Id*.

Next, the grandparents contend that their failure to attend their grandson's scheduled medical appointment was not sufficient evidence to support the family court's finding that they were unable to manage his chronic medical condition. According to the Cabinet's permanency report, this appointment, at Nationwide Children's Hospital in Columbus, was a very important meeting that was scheduled in order for the grandparents to be informed and educated on how to manage grandson's condition, and how to ensure it does not worsen. According to the social worker, the grandparents had been informed about the appointment numerous times, yet they failed to attend. The family court did not abuse its discretion in relying on this evidence, especially in light of the substantial other evidence in the record of serious medical neglect, such as the grandparents not ensuring that grandson was receiving his prescription medications.

Finally, the grandparents argue that grandmother's oxygen dependence was known to the family court when it first awarded them custody, and it should not have been used subsequently as evidence to support the removal of the children. They note that the Cabinet's dispositional reports acknowledged her health condition but did not conclude that it was disqualifying. The Cabinet's permanency report states that grandmother has ongoing medical/respiratory issues, including COPD. Her records from the Louisa Medical Clinic state that she was advised on multiple occasions that the Clinic would not provide a letter stating that

she was able to care for her grandchildren because she is not capable of doing so, and she was advised by the staff that she would be discontinued from that office. The Cabinet's report also stated that grandmother's ability to get around and interact with the children is limited due to her lack of oxygen. She has allowed the children to handle and change her oxygen tanks, despite being told by the social worker not to do so because it poses a safety risk to the children. In light of this evidence, it was not clearly erroneous for the family court to conclude that grandmother's health seriously hindered her ability to look after the children.

As the grandparents themselves acknowledge, because "the family court is in the best position to evaluate the testimony and to weigh the evidence, an appellate court should not substitute its own opinion for that of the family court." *B.C. v. B.T.*, 182 S.W.3d 213, 219 (Ky. App. 2005). The grandparents were given the opportunity after the first removal of the children to improve the condition of their home, to educate themselves about their grandson's condition, and to ensure that he received his medication. The family court concluded that they failed to do so. Based on the evidence in the record, we cannot say that the family court's decision that they should not regain custody was an abuse of discretion.

### CONCLUSION

For the foregoing reasons, the family court's permanency order is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANTS:

Jacob Thomas Moak
Prestonsburg, Kentucky

BRIEFS FOR APPELLEE
COMMONWEALTH OF
KENTUCKY, CABINET FOR
HEALTH AND FAMILY
SERVICES:

R. Jason Greer
Louisa, Kentucky